UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
WDNC Civil Action No. 3:25-cv-00302-MOC-SCR

| | | |
|---|---|---|
| BRAD BUMGARDNER, | ) | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff, | ) | |
| v. | ) | |
| CITY OF GASTONIA, | ) | **Fed. R. Civ. Pro. 56** |
| Defendants. | ) | |

NOW COMES Defendant City of Gastonia, North Carolina, by and through undersigned counsel, and submits this Memorandum of Law in Support of Defendant's Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 56. Defendant City of Gastonia moves the Court for an order dismissing each of Plaintiff's claims with prejudice. In support, Defendant states as follows:

## I. INTRODUCTION

Plaintiff's putative Class Action Complaint against the City of Gastonia ("City" or "Defendant") is subject to dismissal in its entirety because:

1. Plaintiff failed as a matter of law to plead or show that he is an individual with a disability as defined by the Americans with Disabilities Act, as amended; and

2. As a matter of well-settled law, the City of Gastonia is not liable for the actions of an independent contractor that allegedly violated federal law (GINA) when the independent contractor contracted with the City specifically to "comply with all applicable federal, state and local laws, ordinances, codes, rules and regulations (collectively "Laws") throughout the Term of this agreement," the City was not on notice of the independent contractor's actions, and the contractor had been instructed not to seek GINA protected information via applicable standards.

## II.  PROCEDURAL BACKGROUND

Plaintiff filed his putative Class Action Complaint on May 5, 2025, and Defendant answered on July 7, 2025. Written discovery has been exchanged, and the parties unsuccessfully engaged in mediation on May 20, 2026. The City now timely files its Motion for Summary Judgment and Memorandum of Law in Support.

## III.  STATEMENT OF INDISPUTABLE MATERIAL FACTS

1. Plaintiff Brad Bumgardner is and was at all relevant times an employee of Defendant City of Gastonia. *See* Complaint, Doc. 1, ¶ 3.

2. At the time relevant to Plaintiff's Complaint, Plaintiff held the position as Police Officer III with the City of Gastonia, Gastonia Police Department. *See* Defendant's Exhibit 1, Declaration of Judy Smith, ¶ 6; Ex. 1-C.

3. Police officers occupy safety sensitive positions and, as such, are required to undergo a physical fitness for duty examination biannually. *See* Doc. 1, ¶¶ 15, 18; Ex 1, ¶ 7; Ex. 1-D, p. 1, Section III.A.3; Ex. 1-C.

4. Atrium Health is an independent contractor of the City and conducts the biannual medical examinations of police officers such as Plaintiff. *See* Doc 1, ¶ 16; Ex. 1, ¶ 5; Ex. 1-B.

5. Plaintiff filed an EEOC Charge of Discrimination, Charge number 430-2023-00712, alleging that he and putative class members have been discriminated against by the City under the Americans with Disabilities Act ("ADA") and the Genetic Information Nondiscrimination Act ("GINA"). *See* Doc 1, ¶¶ 9-13; Ex. 1, ¶ 4; Ex. 1-A.[1]

---

[1] In his Complaint, Plaintiff refers to alleged violations dating back to 2009. However, in relevant part, 42 U.S.C. § 2000e-5(e)(1) states: "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter…." Thus, only alleged acts of discrimination falling within this 180 day window would be timely.

4920-7340-9966, v. 1

6. Plaintiff has not identified any substantial limitation of a major life activity in support of his ADA disability claim. Rather than showing or adequately pleading that he suffers from a substantial limitation of a major life activity, Plaintiff claims vaguely that he only has "physical issues" that impact certain major life activities. *See* Doc. 1, ¶ 42.

7. Regarding Plaintiff's GINA claim, he asserts that he and putative class members were discriminated against by the City in violation of GINA, but he does not identify any adverse actions in support of this claim of discrimination. *See* Doc. 1, ¶¶ 58-42 (Plaintiff's First Claim for Relief).

8. In Plaintiff's Second Claim for Relief, he alleges that he and similarly situated putative class members were harmed when the City gave them medical questionnaires that sought the disclosure of GINA protected information. *Id.,* ¶¶ 64-66.

9. Plaintiff's Third Claim for Relief asserts disability discrimination under the ADA based upon the same medical questionnaire referenced in Plaintiff's First and Second Claims for Relief and asserts disability discrimination for requiring Plaintiff to pay out of pocket for additional medical expenses. *Id.,* ¶¶ 70-71.

10. The Medical History Statement used by the City of Gastonia after a conditional offer of employment has been made that must be completed by all law enforcement officer applicants

---

*see also, Gilliam v. Bertie Cnty. Bd. of Educ.*, No. 2:20-CV-00076-M, 2022 WL 11867136, at *2 (E.D.N.C. Oct. 20, 2022)(A claim is time-barred if it is not filed within the required time limit).

Moreover, Plaintiff's assertion of a continuing violation theory in his EEOC Charge of discrimination where no allegations of harassment or hostile work environment have been alleged is unpersuasive and does not breathe life into his GINA and ADA Charge: "the 'continuing violation' theory, which 'allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination,' ... only applies ... when an employee asserts a hostile work environment claim." *Mallik v. Sebelius*, 964 F. Supp. 2d 531, 541 (D. Md. 2013). *See also, National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 2072–73, 153 L.Ed.2d 106 (2002); *White v. BFI Waste Services, LLC,* 375 F.3d 288, 293 (4th Cir. 2004); *see also Lewis v. Norfolk Southern Corp.,* 271 F.Supp.2d 807, 813 (E.D.Va.2003) (holding that job transfer, denial of promotion, denial of pay raise, and negative performance review were discrete acts that did not fall within the continuing violation doctrine).

3

4920-7340-9966, v. 1

prior to employment is a form is promulgated by the North Carolina Criminal Justice Training and Standards Commission ("NCCJTS"). It is titled Form F-1(LE).  NCCJTS will not process an officer's application without submission of this form.  The attached Exhibit 1-E is a redacted version of Form F-1(LE)(Rev. 10/01) that was in effect prior to the enactment the Genetic Information Nondiscrimination Act ("GINA"). This version of the Form F-1(LE) seeks family history medical information and is no longer in use. *See* Ex. 1, ¶ 8, Ex. 1-E.

11. In early 2010, NCCJTS revised the Form F-1(LE) to bring it into compliance with GINA. *See* Ex. 1, ¶ 9, Ex. 1-F.  Consequently, the City of Gastonia began using this revised F-1(LE)(Rev. 2/10) for its post-conditional offer of employment Medical History Statement required of all police officer applicants. The attached Form F-1(LE)(Rev. 2/10) shows that the Form F-1 was revised in 2010 to remove any questions related to family medical history in order to comply with GINA and it does not inquire into disability status.

12. Plaintiff completed his F-1(LE) Medical History Statement for the City of Gastonia, Gastonia Police Department on December 8, 2015. *See* Ex, 1, ¶ 10; Ex. 1-G. This F-1(LE)(Rev. 6/11) did not request Plaintiff's disability status or seek genetic information or family medical history information.

13. The Atrium medical questionnaire that is given to Gastonia police officers – and that was given to Plaintiff –  to fill out in connection with the City's biannual medical exam is created solely by Atrium Health. The medical questionnaire that Mr. Bumgardner is challenging[2] was created exclusively by Atrium and was not submitted to any employee or representative of the City of Gastonia for review or input either prior to or after its implementation by Atrium. *See* Ex. 1, ¶ 11.

---

[2] The questionnaire with which Mr. Bumgardner takes issue is Attachment B to Mr. Bumgardner's Charge of Discrimination, Charge number 430-2023-00712, which is attached to this Declaration as Exhibit 1-A.

4

4920-7340-9966, v. 1

14. At the time in question, the medical questionnaire was distributed via email to police officers by an administrative support employee, Ms. S. Welch. Ms. Welch had no input into the creation of the Atrium medical questionnaire form, and she is not an attorney. She is simply a support person with access to the email addresses of all Gastonia Police Department police officers. After the officers complete the form, they place it in a sealed envelope and deliver it to Atrium. *Id.,* ¶ 12.

15. The City of Gastonia does not retain any of the completed medical questionnaires and is not informed of the medical information that is in the questionnaires. *Id.,* ¶ 13.

16. When the City became aware that Atrium's medical questionnaire sought family medical history information by virtue of Mr. Bumgardner's EEOC Charge of Discrimination, the City asked Atrium to delete any questions that sought information protected by GINA. Atrium edited the medical questionnaire as requested by the City, and the medical questionnaire form that is now in use by Atrium does not request family history medical information or any other information that is protected from disclosure by GINA. *Id.,* ¶ 14.

17. It was the City's understanding that in providing occupational health examinations and medical services under Atrium's contractual agreement with the City – including those provided to Mr. Bumgardner – Atrium Health was adhering to guidelines established by the American College of Occupational and Environmental Medicine ("ACOEM"), Guidance for the Medical Examination of Law Enforcement Officers. *See* Ex. 1, ¶ 15; Ex. 1-H. (Applicable portions of ACOEM's guidance pertaining to the medical examination of law enforcement officers).

18. ACOEM's guidance specifically advises organizations that are conducting medical examinations of law enforcement officers to adhere to GINA requirements and refrain from seeking family medical history information or any other GINA protected health information

4920-7340-9966, v. 1

unless the information falls within a GINA exception. *See* Ex. 1, ¶ 16; Ex. 1-H, page City_000199.

19. The Master Employer Services Agreement between Atrium Health and the City of Gastonia provides among other things:

> **5.** **Disclosure of Information and Employer Reports,** Employer acknowledges and agrees that Atrium will not share any Protected Health Information ("PHI") or other identifiable information with Employer regarding any Participant unless authorized by the Participant pursuant to a Conditional Authorization to Release Information, in a form acceptable to Atrium (the "Conditional Authorization").

> **12.** **Independent Contractor,** The sole relationship between the parties 1s that of independent contractors. This Agreement is not intended, nor will it be construed, to create any partnership, employment, agency or joint venture relationship between Employer and Atrium.

> **15.** **Compliance with Laws,** The parties hereto shall comply with all applicable federal, state and local laws, ordinances, codes, rules and regulations (collectively, "Laws") throughout the Term of this Agreement. Notwithstanding anything contained in this Agreement to the contrary, the parties

> acknowledge that Employer is solely responsible for ensuring that it complies with all such Laws related to its business and employment of its own employees, without limitation. In no event shall the provision of Services be construed as Atrium providing legal advice to Employer, any related incentives, and their compliance with applicable laws; Employer assumes all liability associated therewit h.

## Examples of Atrium Clinic Services :

> 6. Comply with all applic able Federal and State laws, including without limitation, all laws concerning the privacy and security of medical infor mation.

*See* Ex. 1, ¶ 17; Ex. 1-B, pages City_00094-96; and City_000101.

### IV. STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted when the pleadings, responses to discovery, depositions, and declarations, if any, establish that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for

6

4920-7340-9966, v. 1

trial. *Schulze v. Meritor Automotive*, 163 F.Supp.2d 599, 608 (W.D.N.C. 2000). Once the moving party has met that burden, the nonmoving party has the burden of persuasion and must come forward with specific facts showing that there is a genuine issue for trial. *Schulze*, 163 F.Supp.2d at 608. In considering the evidence, all reasonable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). An examination of the record in this matter establishes Defendant is entitled to summary judgment.

## V. <u>LEGAL ARGUMENT</u>

**A. Plaintiff's GINA Claims Set Forth in Plaintiff's First and Second Claims for Relief Fail as a Matter of Law Because Plaintiff has Failed to Forecast any Credible Evidence that the City of Gastonia Unlawfully Collected GINA Protected Information From Plaintiff or Any Putative Class Member or That the City Took an Adverse Action Against Plaintiff based Upon Genetic Information**

Under GINA, it is an unlawful employment practice for an employer "to fail or refuse to hire ... or otherwise to discriminate against any employee ... because of genetic information with respect to the employee." 42 U.S.C. § 2000ff–1(a)(1). "Genetic information" with respect to any individual is defined as "information about (i) such individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual." 42 U.S.C. § 2000ff(4)(A); *see also, Culbreth v. Washington Metro. Area Transit Auth.*, No. RWT 10CV3321, 2012 WL 959385, at *4 (D. Md. Mar. 20, 2012); *Kumar v. First Abu Dhabi Bank USA N.V.*, No. CV ELH-20-1497, 2020 WL 6703002, at *11 (D. Md. Nov. 13, 2020).

To establish a claim for genetic discrimination under Title II of the Genetic Information Nondiscrimination Act (GINA), a plaintiff must plead and prove (1) that the plaintiff was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of the plaintiff's genetic information. *See Perry v. John A. Guerrieri, DDS PLLC,* 518 F. Supp. 3d 665,

4920-7340-9966, v. 1

2021 Fair Empl. Prac. Cas. (BNA) 46636 (W.D. N.Y. 2021), appeal withdrawn, 2021 WL 4167361

(2d Cir. 2021).

As explained by a sister U.S. District Court:

The basic intent of GINA is to prohibit employers from making a 'predictive assessment concerning an individual's propensity to get an inheritable genetic disease or disorder based on the occurrence of an inheritable disease or disorder in [a] family member.' H.R.Rep. No. 110–28, pt. 3, at 70 (2007), 2008 U.S.C.C.A.N. 112, 141. Congress included family medical history in the definition of 'genetic information' because it understood that employers could potentially use family medical history 'as a surrogate for genetic traits.' H.R.Rep. No. 110–28, pt. 1, at 36 (2007), 2008 U.S.C.C.A.N. 66, 80; *see also* S.Rep. No. 110–48, at 16 (2007). For instance, a consistent history of an inheritable disease in an individual's family may be viewed to indicate that the individual himself is at an increased risk for that disease. However, the fact that an individual family member merely has been diagnosed with a disease or disorder is not considered 'genetic information' if 'such information is taken into account only with respect to the individual in which such disease or disorder occurs and not as genetic information with respect to any other individual.' H.R.Rep. No. 110–28, pt. 2, at 27 (2007), 2008 U.S.C.C.A.N. 101, 105–106; *see also* Regulations Under the Genetic Information Nondiscrimination Act of 2008, 75 Fed.Reg. 68,917 (Nov. 9, 2010).

*See Poore v. Peterbilt of Bristol, L.L.C.*, 852 F. Supp. 2d 727, 730–31 (W.D. Va. 2012).

GINA also generally prohibits employers from requesting genetic information from their employees. *See Lowe v. Atlas Logistics Group Retail Services (Atlanta), LLC*, 51 Nat'l Disability Law Rep. P 27, 2015 WL 2058906 (N.D. Ga. 2015) (unpublished). However, there are numerous exceptions to this general prohibition. *See* GINA, 42 U.S.C.A. §§ 2000ff-1(b)(1) to (6); 2000ff-2(b)(1) to (5); 2000ff-3(b)(1) to (5); 2000ff-4(b)(1) to (6), for exceptions to the general prohibition against requesting, requiring, or purchasing genetic information.

A final exception exists from a finding of a GINA violation where an entity inadvertently requests or requires family medical history of the individual or his or her family member. 42 U.S.C.A. §§ 2000ff-1(b)(1); 2000ff-2(b)(1); 2000ff-3(b)(1); 2000ff-4(b)(1); *see also,* 29 C.F.R. § 1635.8(b)(1)("The general prohibition against requesting, requiring, or purchasing genetic

8

4920-7340-9966, v. 1

information does not apply [w]here a covered entity inadvertently requests or requires genetic information of the individual or family member of the individual").

Significantly here, the City never requested GINA covered information from employees and Atrium never provided the City with Plaintiff's GINA covered information or that of any other putative class member. Indeed, Atrium was contractually prohibited from disclosing such GINA protected information to the City. *See* Ex. 1, ¶¶ 13-14, 16-17. Further, the ACOEM guidelines being followed by Atrium contained a specific prohibition and instruction to Atrium not to collect genetic information in the course of conducting law enforcement officer physical examinations, which is the service that was being provided to the City by Atrium. *See* Ex. 1, ¶¶ 15-16; Ex. 1-H. Finally, where the City's independent contractor bound itself to comply with all state, federal, and local law, regarding medical records the City could not have violated GINA in any manner. *See, e.g., Hensley v. City of Charlotte, Case 5:16-cv-00009-KDB-DCK, Doc. 148, p. 42.*

Based upon the indisputable evidence of record as shown herein, Plaintiff has failed to state a cognizable claim for a violation of GINA by the City.

### B. Plaintiff Has Failed to State a Claim under the ADA as a Matter of Law

Disability discrimination may be proven through direct evidence or through circumstantial evidence. *See Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015). In a case such as this where there is no direct evidence of discrimination, the claims are analyzed under the now familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *see also EEOC v. Sears Roebuck and Co.*, 243 F.3d 846, 851 (4th Cir. 2001).

In order to be protected under the ADA, Plaintiff must meet his legal burden to show he was discriminated against on the basis of a disability. The proof structure requires Plaintiff to

4920-7340-9966, v. 1

establish a *prima facie* case of disability discrimination.  If such a *prima facie* case is established, the burden then shifts to the City to articulate a legitimate, non-discriminatory reason or reasons for Ms. Plaintiff's discharge.  Finally, if Defendant articulates a legitimate, non-discriminatory reason for an adverse action against Plaintiff, then he again bears the burden of showing Defendant's legitimate, non-discriminatory reason is simply a "pretext" or excuse for the unlawful discrimination against her. A legitimate non-discriminatory reason of the Defendant cannot be proven to be pretext for discrimination unless the complainant shows <u>both</u> that the reason was false <u>and</u> that discrimination was the real reason for the adverse action.

As demonstrated herein, Plaintiff is unable to meet her burden of proving a *prima facie* case of discrimination under the ADA.  Under the ADA, a "disability" may take any of the following forms: (1) "a physical or mental impairment that substantially limits one or more major life activities" (the "actual-disability" prong); (2) "a record of such an impairment" (the "record-of" prong); or (3) "being regarded as having such an impairment" (the "regarded-as" prong). *See* 42 U.S.C. § 12102(1).

Plaintiff alleges that he is disabled by diabetes. However, nowhere has he identified how he is "substantially limited"  in any particular major life activity or activities. All he pleads is that his alleged disability gives rise to "physical issues" regarding certain activities. As a result, Plaintiff has not offered any factual basis upon which an "actual disability" claim would be viable under these circumstances.

Moreover, Plaintiff has not asserted an adverse action which was taken against him by the City based upon an alleged disability. Further, pursuant to binding Fourth Circuit precedent, in order to establish a violation of the ADA, an employee must establish that his disability was the **"but for"** reason for her employer's adverse action.  *See Gentry v. E. W. Partners Club Mgmt. Co.*

4920-7340-9966, v. 1

*Inc.*, 816 F.3d 228, 235–36 (4th Cir. 2016) *citing Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517, 2527–28, 186 L.Ed.2d 503 (2013). An employee may not establish liability under the ADA by showing that disability was a motivating factor. Rather, *it must be the sole "but-for" factor. Id.* Further, in an employment discrimination case, the plaintiff bears "the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed. 207 (1981).

Here, Plaintiff has not plausibly plead that he is disabled or that the City took an adverse action against him solely on the basis is his alleged disability. Thus, the analysis need not proceed. Plaintiff's Third Claim for Relief under the ADA fails as a matter of law and should be dismissed with prejudice.

## CONCLUSION

For all of the foregoing reasons, Defendant, City of Gastonia, respectfully requests that the Court grant Defendant's 12(b)(1) Motion to Dismiss or alternatively, grant Defendant's Motion for Summary Judgment and dismiss each of Plaintiff's claims with prejudice.

This the 20th day of May, 2026.

CRANFILL SUMNER LLP

BY:   /s/Patrick H. Flanagan
      Patrick H. Flanagan, NC Bar #17407
      *Attorneys for Defendant*
      P.O. Box 30787
      Charlotte, NC 28230
      Telephone (704) 332-8300
      Facsimile (704) 332-9994
      phf@cshlaw.com

11

4920-7340-9966, v. 1

## <u>CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE</u>

Pursuant to the June 18, 2024 Standing Order of this Court In Re: Use of Artificial Intelligence, 3:24-mc-104, counsel, by signing above, submits the following certification regarding Defendant's Supplemental Memorandum of Law in Support of Defendant's Motion to Dismiss.

1. No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg, as well as Google and Google Scholar;

2. Every statement and every citation to an authority contained in this Memorandum has been checked by the undersigned as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

4920-7340-9966, v. 1

# CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record:

Daniel C. Lyon
300 E. Kingston Ave., Ste. 200
Charlotte, NC 28203
dlyon@emplawfirm.com
*Attorneys for Plaintiff*

**CRANFILL SUMNER LLP**

BY: /s/Patrick H. Flanagan
Patrick H. Flanagan, NC Bar #17407
*Attorneys for Defendant*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
phf@cshlaw.com

4920-7340-9966, v. 1